**FARNESE P.C.**
Peter J. Farnese (SBN 251204)
pjf@farneselaw.com
700 S. Flower St., Suite 1000
Los Angeles, California 90017
Telephone: 310-356-4668

**HONIK LLC**
Ruben Honik (*Pro hac vice forthcoming*)
ruben@honiklaw.com
David J. Stanoch (*Pro hac vice forthcoming*)
david@honiklaw.com
1515 Market St., Suite 1100
Philadelphia, PA 19102
Telephone: 267-435-1300

*Counsel for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SANDRA MEYERS, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COSMETIC ALCHEMY LLC,<br><br>Defendants. | CASE NO. 2:26-CV-9703<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Sandra Meyers brings this Class Action Complaint on behalf of herself and all others similarly situated against Cosmetic Alchemy LLC. Plaintiff alleges the following upon personal knowledge as to herself and as to all other matters upon information and belief.

## I. INTRODUCTION

1. This class action arises from the false, misleading, unfair, and deceptive sale of beauty products without disclosing dangerous risks and side effects of the products' key ingredient.

2. Defendant Cosmetic Alchemy manufactures and sells beauty products. Among its products are LiLash Purified Eyelash Serum and LiBrow Purified Eyebrow Serum (hereafter, the "Enhancement Serums" or the "Products"). Cosmetic Alchemy deceptively marketed and sold the Enhancement Serums as cosmetics or so-called "serums" (not as drugs) with no warning of serious side effects or risks. Instead, Cosmetic Alchemy touted the safety of the Enhancement Serums.

3. The Enhancement Serums, however, contain dehydrolatanoprost. Dehydrolatanoprost is a prostaglandin analog (PGA), which is in the same class of compounds as the active ingredient found in prescription drugs that grows eyelashes, like Latisse®—which the United States Food and Drug Administration ("FDA") has approved for use only under the supervision of a physician due to the possible adverse effects.

4. PGAs such as dehydrolatanoprost improve hair growth, causing eye lashes and eyebrows to grow longer, darker, and thicker. However, they are also known to cause serious adverse effects to the eye and the structure around the eye, including but not limited to blepharitis, Meibomian Gland Dysfunction, chronic dry eye, redness, discoloration, swelling, pain or irritation, and other serious side effects.

5. Health agencies have stated that dehydrolatanoprost are associated with potential serious side effects.

6. Cosmetic Alchemy did not disclose the risk of any side effects associated

with its Enhancement Serums and has even affirmatively denied same in its marketing and labeling materials. To the contrary, Cosmetic Alchemy falsely implied the Enhancement Serums "naturally" improve the appearance of eyelashes and eyebrows. This is untrue because the Enhancement Serums contain a synthetic substance, dehydrolatanoprost, known to stimulate hair, lash, and brow growth, and which is associated with many undisclosed side effects.

7. In this manner, Cosmetic Alchemy has sold dangerous Enhancements Serums to thousands of consumers at approximately $90-$150 each, without fully disclosing all of the risks and material information about the Enhancement Serums.

8. Without the necessary disclosure of these risks, a reasonable consumer would not expect Cosmetic Alchemy's Enhancement Serums to be associated with any side effects.

9. Plaintiff is one of many consumers who purchased the Enhancement Serums without knowing that using the products as directed by the manufacturer can cause serious side effects.

10. Plaintiff brings this action for economic damages and injunctive relief (not for physical injuries) on behalf of all persons who paid for Cosmetic Alchemy's dangerous Products. Cosmetic Alchemy's wrongful conduct constitutes (i) a violation of Cal. Bus & Prof. § 17200, *et seq.* and Cal. Bus. Code § 17500, *et seq.* (and other states' analogous non-conflicting consumer protection laws), (ii) the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, (iii) fraud (affirmative misrepresentation and omission), (iv) negligent misrepresentation and omission, (v) breach of express warranty, (vi) breach of implied warranty, (vii) negligence, and (viii) unjust enrichment.

## II. <u>PARTIES</u>

11. Plaintiff Sandra Meyers is and was at all pertinent times a citizen of the state of California. Plaintiff, while in California, purchased LiLash Purified Eyelash Serum multiple times for personal use between August 2022 and May 2024. She paid

over $100 for the Products. Examples are as follows:













12. At the time of her purchases, Plaintiff observed the marketing and advertisements for the Enhancement Serums, including those on LiLash's website.

Upon receipt of the Products, she viewed the packaging, labeling, and instructions. None of the foregoing properly disclosed the true facts regarding the Enhancement Serums' ingredients and potential side effects of same. Had they done so, Plaintiff would not have purchased the Enhancement Serums; alternatively, she certainly would have paid less for them. Plaintiff reasonably understood the marketing and labeling of the Enhancement Serums to mean or imply that the product was safe and effective for its intended use and did not carry any undisclosed adverse effects.

13. Plaintiff's most recent use of the Products caused discomfort, eye inflammation, and swelling.

14. Defendant Cosmetic Alchemy LLC is an Arizona limited liability company with its principal place of business in Scottsdale, Arizona. On information and belief, none of Cosmetic Alchemy's members are domiciled in California. At all times relevant hereto, Cosmetic Alchemy marketed, distributed, and sold Enhancement Serums directly through its website, as well as through popular retailers and other third-party sellers.

## III. JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy, exclusive of costs and interest, exceeds the sum of $5 million in the aggregate. There are well over 100 members of the proposed Class that are known to exist. Complete diversity exists between Plaintiff (a citizen of California) and Cosmetic Alchemy (formed in Arizona with its principal place of business in Arizona).

16. This Court has personal jurisdiction over Cosmetic Alchemy because it conducts substantial business in this District. In addition, Plaintiff and other class members have suffered injury as a result of Cosmetic Alchemy's acts in this District.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this District.

## IV. COMMON ALLEGATIONS

18. Cosmetic Alchemy fraudulently, deceptively, and unfairly marketed and sold the Enhancement Serums without disclosing all of the risks and side effects associated with these Products' ingredient, the prostaglandin analog ("PGA") dehydrolatanoprost. To the contrary, Cosmetic Alchemy affirmatively misrepresented that its Enhancement Serums were safe and free of any serious side effects.

19. The Enhancement Serums' marketing, packaging, labeling, and instructions do not disclose that dehydrolatanoprost is associated with hair, lash, and brow growth as well as various side effects and contraindications.

20. Products containing PGAs such as dehydrolatanoprost are well-known in the scientific literature and medical community to pose health risks when used in and around the eyes.

21. PGAs were originally used to reduce intraocular pressure in glaucoma patients. According to the Glaucoma Research Foundation, prostaglandin analogs "work by increasing the outflow of fluid from the eye."[1] A well-known side effect of glaucoma treatments containing PGAs is that they cause eyelash growth.

22. PGAs, including dehydrolatanoprost, are known to have an effect on the body, specifically, the growing, lengthening, and thickening of lashes and brows.[2]

23. Simply put, Cosmetic Alchemy's Enhancement Serums would not be as effective at enhancing the appearance of lashes and eyebrows if they did not contain a PGA ingredient.

24. Dehydrolatanoprost and other PGAs have serious risks and side effects. For instance, dehydrolatanoprost is structurally and functionally similar to the PGA known

---

[1] Glaucoma Medications and their Side Effects, https://glaucoma.org/articles/glaucoma-medications-and-their-side-effects (last accessed Aug. 26, 2026).

[2] *See, e.g.*, Jamison, A., et al., DO PROSTAGLANDIN ANALOGUE LASH LENGTHENERS CAUSE EYELID FAT AND VOLUME LOSS?, Aesth Surg. J. 2022 Oct. 13:42(11):1241-1249.

as latanoprost. Latanprost may cause side effects including but not limited to eye pain, blurry vision, irritation, swelling, redness, and eye discoloration. Similarly, the FDA has stated that ICP, another PGA, may cause side effects to the eye including, but not limited to, ocular irritation, hyperemia, iris color change, macular edema, ocular inflammation, blurry vision, and interference with intraocular pressure reduction therapy.

25. The European Commission's Scientific Committee on Consumer Safety has stated that PGAs are "very potent pharmacologically active substances for which serious adverse effects after direct eye applications have been reported."[3] The Committee expressly included dehydrolatanoprost in its list of PGAs that "were flagged for potential carcinogenicity with a reasonable model certainty" and "were flagged for reproductive and developmental toxicity with a reasonable model certainty."[4] The Committee further concluded that PGAs posed a concern for consumer safety.

26. Ultimately, the Committee was *not* able to conclude that PGAs (including dehydrolatanoprost) are safe when used in cosmetic products intended for use in the proximity of the human eyes. The Committee noted (contrary to Cosmetic Alchemy's packaging and labeling for its Enhancement Serums) that there is insufficient data to conclude that PGAs (including dehydrolatanoprost) are safe for intended purpose and use as cosmetic products.

27. More recently, in 2026, the Scientific Committee on Consumer Safety issued a final opinion concluding that three PGAs could not "be considered safe for use in cosmetic products intended for promoting the growth of eyelashes and eyebrows. The SCCS conclusion is based on the potent pharmacological activity of the PGAs, even at low concentrations, and the lack of acceptable data that would make it possible to

---

[3] European Commission Scientific Committee on Consumer Safety, Opinion on Prostaglandins and prostaglandin-analogues used in cosmetic products (Feb. 3, 2022), at Annex I.

[4] *Id.*at 30.

exclude any potential adverse effects resulting from reproductive/developmental toxicity."[5]

28. In 2008, the FDA approved Latisse®, a similar product that contains an active ingredient called bimatoprost. Bimatoprost is another PGA, like dehydrolatanoprost, which increases eyelash hair length, thickness, and darkness in patients with hypotrichosis (or inadequacy) of the eyelashes.[6] Latisse® is classified as an ophthalmic drug and cannot be obtained without a prescription.[7]

29. Cosmetic Alchemy has not applied for or obtained FDA approval for any of its Enhancements Serums. It has chosen to sell its PGA-containing products directly to consumers without adequate warnings. To sidestep the reality of the scientific data about PGAs including dehydrolatanoprost, Cosmetic Alchemy misleadingly suggests the Enhancement Serums do not contain any harmful substances.

30. For instance, Cosmetic Alchemy's website has a "Product Features" section discussing how the Enhancement Serums work. Cosmetic Alchemy solely focuses on the efficacy of the Enhancements Serums and emphasizes they are "safe for sensitive skin":

---

[5] European Commission Scientific Committee on Consumer Safety, Final Opinion on Prostaglandin Analogues: Methylamido-Dihydro-Noralfaprostal (MDN), Isopropyl Cloprostenate (IPCP), Dechloro Dihydroxy Difluoro Ethylcloprostenolamide (DDDE) (Feb. 10, 2026).

[6] *See* Latisse Approval Letter (Dec. 24, 2008), *at* https://www.accessdata.fda.gov/drugsatfda_docs/nda/2008/022369s000_Approv.pdf.

[7] *See* Latisse Full Prescribing Information (Mar. 2012), *at* https://www.accessdata.fda.gov/drugsatfda_docs/label/2012/022369s005lbl.pdf.

PRODUCT FEATURES

- Conditions and nourishes lashes to support a healthier, fuller-looking appearance
- Begin to see results as soon as 4 weeks, with full results in 12 weeks (90 days)
- Physician-formulated, Ophthalmologist tested eyelash-enhancing serum
- 90-day Money Back Guarantee
- Proudly cruelty-free & never tested on animals
- Paraben-free & safe for sensitive skin
- Easy to apply with a precise brush applicator
- Pairs well with LiBrow Purified Eyebrow Serum

31. Cosmetic Alchemy also buries dehydrolatanoprost as the second-to-last ingredient, without any indication that it is a PGA:

INGREDIENTS

WATER/AQUA, CAPRYLYL GLYCOL,
HYDROXYETHYLCELLULOSE, GLYCERIN, CHLORPHENESIN, PANTHENOL, HYDROLYZED LUPINE
PROTEIN, PRUNUS AMYGDALUS DULCIS FRUIT EXTRACT, SILICA, PHENOXYETHANOL, CITRIC
ACID, DEHYDROLATANOPROST, ETHYLHEXYLGLYCERIN

32. By virtue of its placement and non-explanation of this scientific name beyond the ken of an average consumer, Cosmetic Alchemy deliberately omitted and obfuscated the serious health risks associated with dehydrolatanoprost.

33. Cosmetic Alchemy further misled consumers by affirmatively stating that the Enhancement Serums are safe, with no provisos:

Is LiLash safe?

Yes! LiLash is a physician-formulated serum that has been ophthalmologist tested, making it safe for sensitive eyes and contact lens wearers. We stand by our serum with a complete 90-day satisfaction guarantee.

34. Cosmetic Alchemy may have removed the above statement from its

website, and also may have added a (still deficient) statement about dehydrolatanoprost to its website, *after* Plaintiff's purchases and, most notably, *after* Plaintiff served a pre-suit notice letter earlier this year, and engaged in a months-long effort to try to resolve this matter without filing suit. If true, these post-notice changes are tantamount to tacit admissions that Cosmetic Alchemy's disclosures were inadequate. Moreover, if true, these corrections still mislead consumers because they misrepresent and omit material information about PGAs.

35. Cosmetic Alchemy's packaging, instructions, and other marketing materials, at least up through the time when Plaintiff served the pre-suit notice letter on Cosmetic Alchemy earlier this year, are silent on how dehydrolatanoprost is the only ingredient in the Enhancement Serums that is scientifically associated with hair, lash, and brow growth, and also is associated with a number of risks and side effects.

36. Each of Defendant's Enhancement Serums contain dehydrolatanoprost. Every Enhancement Serum, including those purchased by Plaintiff and other class members, contains dehydrolatanoprost in the same quantities that carry the same undisclosed risks.

37. Defendant materially omitted and did not adequately disclose to consumers that the Enhancement Serums carry certain health and safety risks.

38. By omitting this information, Defendant actively misrepresented and concealed material facts and leads reasonable consumers to believe they are purchasing Products that are safe and do not have any of the know risks.

39. In marketing and selling the Enhancement Serums, Defendant materially omits and does not adequately disclose to consumers that dehydrolatanoprost is known to cause or may cause eye-related diseases or conditions, including but not limited to hyperemia, macular edema, ocular inflammation, periorbitopathy, and the lowering of intraocular pressure. Defendant also materially omits that when PGAs are applied to areas near the face, they can cause excess hair growth outside the treatment area, for instance on the cheek. Defendant further fails to mention that dehydrolatanoprost can

cause clumps of hair, brows, and lashes to completely fall out instead of grow.

40. Defendant was aware, or certainly should have been aware, of the dangerous, undisclosed side effects of the PGA in the Enhancement Serums, and cannot plausibly contend otherwise.

41. Despite notice and actual knowledge of the risks associated with the Enhancement Serums, Defendant has failed and/or refused to provide an adequate disclosures, at least for substantial periods of time.

42. Whether a product has adverse side effects caused by an ingredient is material information that reasonable consumers would consider in deciding to buy the Products.

43. Reasonable consumers would consider the affirmatively misrepresented and omitted facts to be important in determining whether or not to purchase the Enhancement Serums at all, or alternatively at the prices at which the Products were purchased.

44. Defendant affirmatively misrepresented and omitted the above-described material information with the knowledge that its omissions would mislead and deceive consumers. Alternatively, Defendant was reckless or negligent in not knowing that the omissions were deceptive and/or misleading.

45. Plaintiff and other class members relied, to their detriment, on Defendant to distribute safe products that were fit for their intended use. Instead, Defendant marketed and sold Enhancement Serums knowing that they contain an ingredient known to cause undisclosed, serious adverse effects.

46. As the direct and proximate result of Defendant's deceptive and/or misleading material misrepresentations and omissions, Plaintiff and other class members have suffered injury-in-fact and a loss of money or property through the out-of-pocket costs expended to purchase the Enhancement Serums.

47. Defendant did not recall or reformulate the Enhancement Serums, nor did it adequately warned consumers about the dangers associated with using the Enhancement

Serums, at all relevant times.

48. Defendant has fraudulently concealed its wrongdoing. Plaintiff and other class members exercised reasonable diligence but could not discover the full scope of Defendant's wrongful conduct earlier. Defendant has yet to fully reveal the truth about the Enhancement Serums' undisclosed risks. To the contrary, Defendant falsely maintained for years its Products are safe, merchantable, and fit for intended purposes, until Plaintiff served a pre-suit notice letter on Defendant.

## V. CLASS ALLEGATIONS

49. Plaintiff brings this action both individually and as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) against Defendant on behalf of Plaintiff herself and on the below classes (collectively referred to as "the Class"), to the extent class members from these jurisdictions can be grouped together for purposes of class treatment:

> National Class: All individuals in the United States and its territories and possession who, from the beginning of the statutory period through the present, paid any money for Enhancement Serums for personal, family, or household purposes.
>
> California Subclass: All individuals in California who, from the beginning of the statutory period through the present, paid any money for Enhancement Serums for personal, family, or household purposes.

50. Excluded from the Class are (a) any judge or magistrate presiding over this action, and members of their families; (b) Defendant and its employees, officers, directors, and agents; (c) Defendant's legal representatives, assigns and successors; and (d) all persons who properly execute and file a timely request for exclusion from any Court-approved class.

51. Plaintiff reserves the right to narrow or expand the foregoing class definitions, or to create or modify subclasses as the Court deems necessary.

52. Plaintiff meets the prerequisites of Rule 23(a) to bring this action on behalf

of the Class.

53. **Numerosity**: While the exact number of class members cannot be determined without discovery, they are believed to consist of potentially tens or hundreds of thousands of consumers nationwide, and thousands of consumers in California alone. The Class is therefore so numerous that joinder of all members is impracticable.

54. **Commonality**: Common questions of law and fact exist as to all class members, including but not limited to:

a. Whether Defendant affirmatively, misleading, deceptively, and unfairly misrepresents the safety profile and risks of the Enhancement Serums;

b. Whether Defendant omitted the safety profile and risks of the Enhancement Serums;

c. Whether Defendant had a duty to disclose material facts about safety concerns associated with the Enhancement Serums;

d. Whether Defendant had a duty to not misrepresent material facts about safety concerns associated with the Enhancement Serums;

e. Whether Defendant failed to disclose material facts regarding safety concerns associated with the Enhancement Serums;

f. Whether Defendant's nondisclosures and misrepresentations would be material to a reasonable consumer;

g. Whether Defendant was unjustly enriched by receiving monies in exchange for the Enhancement Serums;

h. Whether the challenged practices harmed Plaintiff and other members of the Class; and

i. Whether Plaintiff and other members of the Class are entitled to damages, restitution, equitable relief, and/or injunctive relief.

55. **Typicality**: Plaintiff's claims are typical of other class members' claims. Plaintiff and other class members all suffered the same type of economic harm. Plaintiff

has substantially the same interest in this matter as all other class members, and Plaintiff's claims arise out of the same set of facts and conduct as the claims of all other class members.

56. **Adequacy of Representation**: Plaintiff is committed to pursuing this action and have retained competent counsel experienced in pharmaceutical litigation, consumer fraud litigation, class actions, and federal court litigation. Accordingly, Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of other class members. Plaintiff's claims are coincident with, and not antagonistic to, those of the other class members they seek to represent. Plaintiff has no disabling conflicts with other class members and will fairly and adequately represent the interests of class members.

57. **Notice**: If necessary, notice of this action may be affected to the proposed Class through publication in a manner authorized in the Federal Rules of Civil Procedure. Also, Class members may be notified of the pendency of this action by mail and/or email, through the distribution records of Defendant, third party retailers, and vendors.

58. The elements of Rule 23(b)(2) are met. Defendant has acted on grounds that apply generally to all class members so that preliminary and/or final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole. Plaintiff and other putative class members would at least have the full opportunity to consider whether to buy the Enhancement Serums in the future if Defendant fully discloses all omitted information about the Products.

59. The requirements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. Although many other class members have claims against Defendant, the likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

Serial adjudication in numerous venues would not be efficient, timely or proper. Judicial resources would be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible. In addition, individualized rulings and judgments could result in inconsistent relief for similarly situated plaintiffs. Plaintiff's counsel, highly experienced in pharmaceutical litigation, consumer fraud litigation, class actions, and federal court litigation, foresee little difficulty in the management of this case as a class action.

## VI. <u>CAUSES OF ACTION</u>

### COUNT I – VIOLATION OF CONSUMER PROTECTION ACTS

60. Plaintiff asserts this claim on behalf of herself and all similarly situated class members under California law and all states' laws that do not conflict with California law.

61. Defendant has violated the consumer protection statutes as follows:

a. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code § 8-19-1, *et seq.*;

b. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, *et seq.*;

c. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Arizona Rev. Stat. § 44-1522, *et seq.*;

d. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, *et seq.*;

e. Defendant violated the California Unfair Competition Law by engaging in unfair or deceptive acts or practices in violation of Cal. Bus. Prof. Code § 17200, *et seq.*;

f. Defendant violated the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*

g. Defendant engaged in unfair competition or unfair or deceptive acts

or practices in violation of Colo. Rev. Stat. § 6-1-105, *et seq*.;

h. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b, *et seq*.;

i. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code § 2511, *et seq*.;

j. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. Code § 28-3901, *et seq*.;

k. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, *et seq*.;

l. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. State 10-1-392, *et seq*.;

m. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480, *et seq*.;

n. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, *et seq*.;

o. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation 815 ILCS 505/1, *et seq*.;

p. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. § 24-5-0.5.1, *et seq*.;

q. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code Ann. § 714H, *et seq*.;

r. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, *et seq*.;

s. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.110, *et seq*.;

t. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, *et seq*.;

u. Defendant engaged in unfair competition or unfair or deceptive acts

or practices in violation of 5 Me. Rev. Stat. § 207, *et seq.*;

v. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, *et seq.*;

w. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93A, *et seq.*;

x. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. § 445.901, *et seq.*;

y. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 325F.67, *et seq.*;

z. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-1, *et seq.*;

aa. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Mo. Rev. Stat. § 407.0 10, *et seq*.;

bb. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code § 30-14-101, *et seq.*;

cc. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq.*;

dd. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, *et seq.*;

ee. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, *et seq.*;

ff. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Stat. Ann. § 56:8-1, *et seq.*;

gg. Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. Ann. § 57-12-1, *et seq.*;

hh. Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*;

ii. Defendant engaged in unfair competition or unfair or deceptive acts

or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*;

jj. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01, *et seq.*;

kk. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, *et seq.*

ll. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. tit. 15 § 751, *et seq.*;

mm. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605, *et seq.*;

nn. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, *et seq.*;

oo. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws § 6-13.1-1, *et seq.*;

pp. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, *et seq.*;

qq. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Code Laws § 37-24-1, *et seq.*;

rr. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, *et seq.*;

ss. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, *et seq.*;

tt. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. § 13-11-1, *et seq.*;

uu. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. Tit. 9, § 2451, *et seq.*;

vv. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, *et seq.*;

ww. Defendant engaged in unfair competition or unfair or deceptive acts

or practices in violation of Wash. Rev. Code § 19.86.010, *et seq.*;

xx. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-101, *et seq.*;

yy. Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.20, *et seq.*;

zz. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. § 40-12-100, *et seq.*; and

aaa. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 23 L.P.R.A. § 1001, *et seq.*, the applicable statute for the Commonwealth of Puerto Rico.

62. Defendant's conduct constitutes trade or commerce or other actionable activity within the meaning of the above statutes.

63. Each Plaintiff and other Class Member is a consumer or person aggrieved by Defendant's misconduct within the meaning of the above statutes.

64. Defendant's conduct as alleged herein constitutes unfair, deceptive, misleading, unlawful, fraudulent, or otherwise actionable practices as to Defendant's conduct concerning the ingredients and safety profile for the Enhancement Serums. Defendant promised a safe and effective product, but the Products were not as promised because their actual safety profile was not the same as that represented and bargained for.

65. To the extent applicable, Defendant knew, intended, or should have known that its fraudulent and deceptive acts, omissions, or concealment would induce reliance and that reliance can be presumed under the circumstances. As a direct and proximate result of Defendant's unfair methods of competition and unfair or deceptive acts or practices, Plaintiff and other Class Members have suffered damages– an ascertainable loss – in an amount to be proved at trial.

66. Defendant engaged in unlawful conduct by deliberately and knowingly engaging in misleading, deceptive, and false statements regarding the Enhancement

Serums in the course of Defendant's business. Specifically, Defendant represented that the Enhancement Serums were safe and effective, and did not carry any undisclosed risks. But this was not the case, as the Enhancement Serums carried health risks that were not disclosed. Defendant made these misrepresentations, or omitted material information, in its marketing (including its website and the websites of its authorized resellers) for the Enhancement Serums, and the Products' packaging, labeling, and instructions.

67. The existence of undisclosed risks would have been material to Plaintiffs and other class members.

68. Plaintiff and other class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information in that Plaintiff and other class members would not have purchased the Enhancement Serums, or not have purchased on the same terms (e.g., purchased them for substantially less), had they known the truth.

69. Although Plaintiff does not seek to recover for physical injuries, Defendant's Enhancement Serums carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's face and eye area.

70. To the extent applicable, pre-suit notice and/or a demand letter was sent to Defendant prior to the filing of the Complaint.

**COUNT II – VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**

71. Plaintiff asserts this claim on behalf of herself and all similarly situated California class members against Defendant for violating Defendant the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.

72. Plaintiff is a consumer as defined by California Civil Code § 1761(d). The

Products are a goods within the meaning of the Act. Specifically, prior to the filing of this action, as alleged herein, Plaintiff purchased the Products for her own personal use. In so doing, Plaintiff relied upon the representations referenced above. Plaintiff would not have purchased the Product, nor would she have paid the price that she did, had she known that it contained a prostaglandin associated with a variety of side effects and health risks.

73. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant' actions as set forth herein.

74. Defendant have violated and continue to violate the CLRA by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the Products:

a. §1770(a) (5) "Representing that [The Product(s) have] ... characteristics, ... uses [or] benefits ... which [it does] not have . . ."

b. §1770(a) (7) "Representing that [the Product(s) are] of a particular standard, quality or grade . . . if [it is] of another.

c. 1770(a) (9)) "Advertising goods . . .with intent not to sell them as advertised."

75. Defendant violated the CLRA by representing through its advertisements, packaging, and labeling of the Products as described above, when they knew, or should have known, that the representations and advertisements were false and misleading.

76. Plaintiff and the California members of the putative Class have each been directly and proximately injured by the conduct of Defendant, and such injury includes payment for units of the Products they purchased.

77. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA. Pursuant to Cal. Civil Code § 1782(d), Plaintiff and the California members of the Class seek a court order enjoining the above-described wrongful acts and practices of Defendant along with any other

conduct found by the court to be illegal, fraudulent, misleading, unlawful, unfair and/or deceptive conduct.

78. To the extent applicable, pre-suit notice and/or a demand letter was sent to Defendant prior to the filing of the Complaint.

79. Plaintiff engaged counsel to prosecute this action and is entitled to recover costs and reasonable attorney's fees according to proof at trial.

**COUNT III – FRAUD**

**(AFFIRMATIVE MISREPRESENTATION, AND OMISSION)**

80. Plaintiff asserts this claim on behalf of herself and all similarly situated class members under California law and all states' laws that do not conflict with New California law.

81. Defendant affirmatively misrepresented material facts about its Enhancement Serums, including but not limited to whether they were safe and effective, and did not contain any undisclosed risks. But this was not the case with risks that were not disclosed.

82. Defendant omitted material facts including, inter alia, that Enhancement Serums carried undisclosed risks.

83. Defendant made these misrepresentations, or omitted material information, in its marketing (including its website and the websites of its authorized resellers) for the Enhancement Serums, and the Products' packaging, labeling, and instructions.

84. Defendant's conduct induced customers to pay for Enhancement Serums, products which Defendant knew or should have known carried undisclosed risks. Plaintiff and other class members would not have purchased Enhancement Serums, or would not have purchased them on the same terms (e.g., purchased them for substantially less), had they known the truth.

85. Defendant knew, was reckless in its disregard for, or should have known of, the true character of Enhancement Serums, including but not limited to their undisclosed risks. Prior information in the art, among other things, put Defendant on

actual or constructive notice of this.

86. Defendant knew or reasonably should have known its misrepresentations or omissions were materially false or misleading, or rendered their representations materially false or misleading.

87. Defendant knew or should have known that its misrepresentations and omissions would induce Plaintiff and class members to pay for Enhancement Serums. To the extent applicable, Defendant intended its misrepresentations and omissions to induce Plaintiff and other class members to pay for Enhancement Serums.

88. Defendant's conduct alleged herein demonstrates its intent to deceive Plaintiff and other class members. Defendant, *inter alia*, intentionally omitted material facts and made affirmative misrepresentations described herein about the Enhancement Serums which it knew were false or inaccurate. Further, Defendant deliberately altered some (but not all) of its marketing materials' misrepresentations or omissions after being put on notice of similar claims. The totality of the circumstances plausibly demonstrates Defendant's knowledge or intentionality.

89. Defendant's misrepresentations and omissions were material. Defendant promised a safe and effective product, but the Products were not as promised because their actual safety profile was not the same as that represented and bargained for.

90. Defendant actively concealed its misrepresentations and omissions from Plaintiff and other class members.

91. To the extent applicable, Plaintiff and other class members were reasonably justified in relying on Defendant's misrepresentations and omissions. The same or substantively identical misrepresentations and omissions were communicated to Plaintiff and each class member at time of purchase through Defendant's marketing, packaging, labeling, and instructions. To the extent applicable, reliance may be presumed in these circumstances.

92. Although Plaintiff does not seek to recover for physical injuries, Defendant's Enhancement Serums carried undisclosed risks and resulted in physical

impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's face and eye area.

93. Plaintiff and other class members were damaged by reason of Defendant's misrepresentations and omissions.

**COUNT IV – NEGLIGENT MISREPRESENTATION**

**(AFFIRMATIVE MISREPRESENTATION AND OMISSION)**

94. Plaintiff asserts this claim on behalf of herself and all similarly situated class members under California law and all states' laws that do not conflict with California law.

95. Defendant affirmatively misrepresented material facts about its Enhancement Serums, including but not limited to whether they were safe and effective, and did not carry undisclosed risks. But this was not the case, as the Enhancement Serums carried risks that were not disclosed.

96. Defendant omitted material facts including the Enhancement Serums' undisclosed risks.

97. Defendant made these misrepresentations, or omitted material information, in its marketing (including its website and the websites of its authorized resellers) for the Enhancement Serums, and the Products' packaging, labeling, and instructions.

98. Defendant's conduct induced customers to pay for Enhancement Serums, products which Defendant knew or should have known carried undisclosed risks. Plaintiff and other class members would not have purchased Enhancement Serums, or would not have purchased them on the same terms (e.g., purchased them for substantially less), had they known the truth.

99. Defendant knew, was reckless in its disregard for, or should have known of, the true character of Enhancement Serums, including but not limited to their undisclosed risks. Prior information in the art, among other things, put Defendant on actual or constructive notice of this.

100. Defendant knew or reasonably should have known its misrepresentations or omissions were materially false or misleading, or rendered their representations materially false or misleading.

101. Defendant knew or should have known that its misrepresentations and omissions would induce Plaintiff and class members to pay for Enhancement Serums. To the extent applicable, Defendant intended its misrepresentations and omissions to induce Plaintiff and other class members to pay for Enhancement Serums.

102. Defendant's conduct alleged herein demonstrates its intent to deceive Plaintiff and other class members. Defendant, *inter alia*, intentionally omitted material facts and made affirmative misrepresentations described herein about the Enhancement Serums which it knew were false or inaccurate. Further, Defendant deliberately altered some (but not all) of its marketing materials' misrepresentations or omissions after being put on notice of similar claims. The totality of the circumstances plausibly demonstrates Defendant's knowledge or intentionality.

103. Defendant's misrepresentations and omissions were material.

104. Defendant actively concealed its misrepresentations and omissions from Plaintiff and other class members.

105. To the extent applicable, Plaintiff and other class members were reasonably justified in relying on Defendant's misrepresentations and omissions. The same or substantively identical misrepresentations and omissions were communicated to Plaintiff and each class member at time of purchase through its marketing, packaging, labeling and instructions.  o the extent applicable, reliance may be presumed in these circumstances.

106. Defendant had owed a special duty to Plaintiff and each other class member on account of the special relationship that existed between Defendant, as a seller of a product to be applied to the human body (and to the sensitive areas of the human face no less). On account of the known or knowable application and use of the Enhancement Serums, and Defendant's superior knowledge and position as

manufacturer, distributor, and seller of the Enhancement Serums, Defendant had a special duty to disclose risks of the Enhancement Serums to consumers such as Plaintiff and other class members.

107. Although Plaintiff does not seek to recover for physical injuries, Defendant's Enhancement Serums carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's face and eye area.

108. Plaintiff and other class members were damaged by reason of Defendant's misrepresentations and omissions.

109. Plaintiff's and class members' damages were proximately caused by Defendant's intentional fraudulent misrepresentations and omissions alleged herein.

**COUNT V – BREACH OF EXPRESS WARRANTY**

110. Plaintiff asserts this claim on behalf of herself and all similarly situated class members under California law and all states' laws that do not conflict with California law.

111. Plaintiff and each other class member formed a contract with Defendant at the time they purchased Enhancement Serums. The terms of the contract include the promises and affirmations of fact made by Defendant on the Enhancement Serums' packaging, labeling and instructions, and through marketing and advertising, including that the Products would be of the quality and character as represented including but not limited to statements about the safety and efficacy of the product, and the lack of disclosure about dangerous side effects. This marketing, packaging, labeling and instructions constitute express warranties and became part of the basis of the bargain, and are part of the standardized expectation between class members and Defendant.

112. Defendant expressly warranted that its Enhancement Serums were cosmetic products that were safe and effective for intended use, and did not contain any undisclosed risks. Defendant's promotional and other materials also affirmatively

warranted its Enhancement Serums were safe for sensitive eyes and contact lens wearers, and that the Products provide naturally healthier lashes or brows.

113. Defendant made these misrepresentations, or omitted material information, in its marketing (including its website) for the Enhancement Serums, and the Products' packaging, labeling, and instructions.

114. Defendant sold Enhancement Serums that they expressly warranted were safe and effective cosmetics that did not contain any undisclosed risks.

115. Defendant's Enhancement Serums did not conform to its express representations and warranties because the products contained undisclosed risks.

116. At all times relevant times, California and all other states had codified and adopted the provisions of the Uniform Commercial Code governing the warranty of merchantability and fitness for ordinary purpose.

117. At the time Defendant marketed and sold its Enhancement Serums, it recognized the purposes for which the products would be used, and expressly warranted the products were cosmetic products were safe and effective for intended use, and did not contain any undisclosed risk. These affirmative representations became part of the basis of the bargain in every purchase.

118. Defendant breached its express warranties with respect to its Enhancement Serums as they were not of merchantable quality, and were not fit for their ordinary purpose. Defendant promised a safe and effective product, but the Products were not as promised because their actual safety profile was not the same as that represented and bargained for.

119. Plaintiff and each other class member would not have purchased the Enhancement Serums had they known these products carried undisclosed risks, or alternatively would not have purchased them on the same terms (e.g., purchased them for substantially less).

120. To the extent applicable, direct privity is not required between Defendant and Plaintiff or other class members because among other things, Defendant is a

manufacturer and made direct statements about the safety of its products, and intended its statements and affirmations to flow to Plaintiff and other class members. Defendant directly sold the Enhancement Serums itself or through authorized resellers operating under strict direction from Defendant.

121. As a direct and proximate result of Defendant's breach of warranty, Plaintiff and each other class member have been injured and suffered damages in the amount of the purchase price of the Products, in that the Enhancement Serums they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

122. Although Plaintiff does not seek to recover for physical injuries, Defendant's Enhancement Serums carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's face and eye area.

123. Pre-suit notice is not required, but even if it is, such notice was provided to Defendant.

## COUNT VI – BREACH OF IMPLIED WARRANTY

124. Plaintiff asserts this claim on behalf of herself and all similarly situated class members under California law and all states' laws that do not conflict with California law.

125. Plaintiff and each other class member formed a contract with Defendant at the time they purchased Enhancement Serums. The terms of the contract include the promises and affirmations of fact made by Defendant in its marketing, packaging, labeling and instructions for the Enhancement Serums, including that the product would be of the quality and character as represented including but not limited to statements about the safety and efficacy of the product, and the lack of disclosure about dangerous side effects. The foregoing constitute implied warranties and became part of the basis of the bargain, and are part of the standardized expectation between class members and

Defendant

126. Defendant expressly warranted that its Enhancement Serums were cosmetic products that were safe and effective for intended use, and did not contain any undisclosed risks. Defendant's promotional and other materials also affirmatively warranted its Enhancement Serums were safe for sensitive eyes and contact lens wearers, and that the Products provide naturally healthier lashes or brows.

127. Defendant made these misrepresentations, or omitted material information, in its marketing (including its website and the websites of its authorized resellers) for the Enhancement Serums, and the Products' packaging, labeling, and instructions.

128. Defendant sold Enhancement Serums that they impliedly warranted were safe and effective cosmetics that did not contain any undisclosed risks.

129. Defendant's Enhancement Serums did not conform to its implied representations and warranties because the products contained undisclosed risks.

130. At all times relevant times California and all other states had codified and adopted the provisions of the Uniform Commercial Code governing the warranty of merchantability and fitness for ordinary purpose.

131. At the time Defendant marketed and sold its Enhancement Serums, it recognized the purposes for which the products would be used, and impliedly warranted the products were cosmetic products, were safe and effective for intended use, and did not contain any undisclosed risk. These representations became part of the basis of the bargain in every purchase.

132. Defendant breached its implied warranties with respect to its Enhancement Serums as they were not of merchantable quality, and were not fit for their ordinary purpose. Defendant promised a safe and effective product, but the Products were not as promised because their actual safety profile was not the same as that represented and bargained for.

133. Plaintiff and each other class member would not have purchased the Enhancement Serums had they known these products carried undisclosed risks, or

alternatively would not have purchase them on the same terms (e.g., purchased them for substantially less).

134. To the extent applicable, direct privity is not required between Defendant and Plaintiff or other class members because among other things, Defendant is a manufacturer and made direct statements about the safety of its products, and intended its statements and affirmations to flow to Plaintiff and other class members. Defendant directly sold the Enhancement Serums itself or through authorized resellers operating under strict direction from Defendant.

135. As a direct and proximate result of Defendant's breach of warranty, Plaintiff and each other class member have been injured and suffered damages in the amount of the purchase price of the Enhancement Serums, in that the Enhancement Serums they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

136. Although Plaintiff does not seek to recover for physical injuries, Defendant's Enhancement Serums carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's face and eye area.

137. Pre-suit notice is not required, but even if it is, such notice was provided to Defendant.

**COUNT VII – NEGLIGENCE**

138. Plaintiff asserts this claim on behalf of herself and all similarly situated class members under California law and all states' laws that do not conflict with California law.

139. Defendant owed a duty to Plaintiff and each other class member to ensure its Enhancement Serums complied were safe and effective, and did not contain any undisclosed active risks.

140. Defendant owed a duty to Plaintiff and each other class member because

the latter were foreseeable, reasonable, and probably users of Enhancement Serums, and victims of Defendant's deceptive and wrongful conduct. Defendant knew, or should have known, that its Enhancement Serums were not safe and effective, and contained undisclosed risks.

141. Defendant inadequately oversaw its own manufacture, distribution, marketing, and sale of its Enhancement Serums, resulting in the Enhancement Serums being sold to consumers without disclosure of the true character of the product.

142. Defendant maintained or should have maintained a special relationship with Plaintiff and each other class member, who were anticipated or intended direct and intended third-party beneficiaries, as it was obligated to ensure that its Enhancement Serums were safe and effective, and did not contain any undisclosed risks.

143. Defendant's own actions and inactions created a foreseeable risk of harm to Plaintiff and each other class member.

144. Defendant breached duties owed to Plaintiff and each other class member by failing to exercise reasonable care sufficient to protect the interests and meet the needs of Plaintiff and each other class member.

145. Although Plaintiff does not seek to recover for physical injuries, Defendant's Enhancement Serums carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's face and eye area.

146. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and each other class member suffered injury and are entitled to damages in an amount to be proven at trial.

**COUNT VIII – UNJUST ENRICHMENT**

147. Plaintiff asserts this claim on behalf of herself and all similarly situated class members under California law and all states' laws that do not conflict with California law.

148. Defendant was unjustly enriched at the expense of Plaintiff and each other class member by virtue of their paying for Defendant's Enhancement Serums. Plaintiff and each other class member conferred a direct benefit on Defendant by purchasing Defendant's Enhancement Serums either directly from Defendant or through a reseller. Defendant maintained a strict list of authorized resellers during the class period.

149. Defendant profited immensely from selling the Enhancement Serums that carried undisclosed risks.

150. Plaintiff and each other class member were unjustly deprived of money obtained by Defendant as a result of the improper amounts paid for Defendant's Enhancement Serums. It would be inequitable and unconscionable for Defendant to retain the profit, benefit, and other compensation obtained from Plaintiff and each other class member as a result of Defendant's wrongful conduct alleged.

151. In the alternative to the other causes of actions alleged herein, Plaintiff and each other class member have no adequate remedy at law.

152. Although Plaintiff does not seek to recover for physical injuries, Defendant's Enhancement Serums carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's face and eye area.

153. Plaintiff and each other class member are entitled to seek and do seek restitution from Defendant as well as an order from this Court requiring disgorgement of all profits, benefits, and other compensation obtained by Defendant's by virtue of its wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following judgment:

a. An order certifying this action as a class action;

b. An order appointing Plaintiff as Class Representative, and appointing undersigned counsel as Class Counsel to represent the Class;

c. A declaration that Defendant is liable pursuant to each and every one of the above-enumerated causes of action;

d. An order awarding appropriate preliminary and/or final injunctive relief against the conduct of Defendant described herein;

e. Payment to Plaintiff and class members of all damages, exemplary or punitive damages, and/or restitution associated with the conduct for all causes of action in an amount to be proven at trial, including but not limited to the full amounts paid or reimbursed for Enhancement Serums and Defendant's ill-gotten gains;

f. An award of attorneys' fees, expert witness fees, and costs, as provided by applicable law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the class members;

g. An award of statutory penalties to the extent available;

h. Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

i. Such other and further relief as this Court may deem just, equitable, or proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all causes of action so triable.

Dated: August 31, 2026

Respectfully submitted,

**FARNESE P.C.**

By: /s/Peter J. Farnese
Peter J. Farnese

**HONIK LLC**
Ruben Honik (*Pro hac vice forthcoming*)

ruben@honiklaw.com
David J. Stanoch (*Pro hac vice forthcoming*)
david@honiklaw.com
1515 Market St., Suite 1100
Philadelphia, PA 19102
(267) 435-1300

Attorneys for Plainitff

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Peter J. Farnese, declare as follows:

1. I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am a Partner at Farnese P.C., co-counsel of record for Plaintiff Sandra Myers in this action. Plaintiff alleges that she is a citizen of California who resides in this District. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2. The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Westlake Village, California, this 31st day of August, 2026.

/s/Peter J. Farnese
Peter J. Farnese